WILLIAM S. HIXON & others *vs.* JAMES GOULD & others.

Suffolk.    March 14, 1902. — June 17, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, HAMMOND, & LORING, JJ.

*Municipal Corporations.    Chelsea.    Statute,* Construction.

By St. 1900, c. 202, " The city of Chelsea, for the purpose of purchasing land and
erecting thereon a high school building, for furnishing the same, and for other
school purposes, and for erecting a fire station and enlarging the Spencer
Avenue schoolhouse," was given authority to incur indebtedness beyond the
limit fixed by law to an amount not exceeding $200,000. *Held,* that the intention
of the Legislature was to authorize indebtedness beyond the debt limit to the
amount named, on condition that the money should be expended for school pur-
poses and for a fire station, and that under the words " other school purposes,"
after a fire station had been constructed, the city could expend the remainder of
the money on the construction of a grammar schoolhouse not mentioned in the
act and in erecting a high school building on a lot already occupied by another
schoolhouse which was to be moved away, to the exclusion of the specific school
purposes named in the act.

PETITION, filed November 22, 1901, by ten taxable inhabitants
of Chelsea under St. 1898, c. 490, for an order restraining the
mayor and other officers of that city from raising or expending
money or incurring obligations for the purpose of constructing
a grammar schoolhouse on the "Dr. Forsyth lot" and building
a new high school on land already owned by the city, and doing
other things alleged not to be authorized by St. 1900, c. 202.

St. 1900, c. 202, provided, that " The city of Chelsea, for the
purpose of purchasing land and erecting thereon a high school
building, for furnishing the same, and for other school purposes,
and for erecting a fire station and enlarging the Spencer Avenue
schoolhouse, may incur indebtedness beyond the limit fixed by
law to an amount not exceeding two hundred thousand dollars."

The case was heard by *Barker,* J.  It appeared, that the sum
of $22,000 had already been raised by the issue of bonds under
the act, and had been used for the erection of a fire station, con-
cerning the legality of which no question was raised ; and that
the board of aldermen had undertaken to provide for the ex-
penditure of the entire balance of the fund by passing the
following order :

" Ordered, that His Honor the Mayor be and he hereby is authorized to purchase the lot of land on Everett Avenue and West Third Street, owned by the heirs of Dr. Forsyth, and the vacant lot of land on the northerly side of Library Street, and lying between Chestnut and Cherry Streets.

" Ordered, that a new Grammar School Building be erected on the Dr. Forsyth lot and a new High School Building be erected on the so-called Broadway lot, both buildings to be built according to plans and specifications by W. Hart Taylor now before the Board of Aldermen which are hereby approved.

" Ordered, that the present Broadway School-house be moved on to the aforesaid lot, northerly of Library Street, and it be placed on a substantial foundation and be refitted and furnished for manual training purposes, and that in the basement of said building, as relocated, the heating apparatus for the new High School-house shall be placed.

" Ordered, that said High School building shall be furnished and fitted for occupancy, that the grounds about the Grammar School, the grounds about the Manual Training School and the High School building shall be graded and seeded.

" Ordered, that the sum of $48,000 be and is hereby appropriated for, purchasing land and erecting the Grammar School-house and that the sum of $130,000 be and is hereby appropriated for the purchase of land, relocating and remodelling the present Broadway Building and erecting and furnishing a new High School-house.

" All sums of money called for by these orders to be charged to the loan authorized by chapter 202, Acts of 1900, when made."

By a further order the board directed the preparation and sale of bonds for the purpose of raising the $178,000 under the act for the purposes prescribed in the foregoing orders providing for the construction of school buildings, which bonds were in the course of preparation when the petition was filed but had not been executed nor issued.

It further appeared, that no part of the authorized $200,000 had been employed for the purpose of enlarging the Spencer Avenue schoolhouse, and that all of the fund had been appropriated, so that there was then no money available for that purpose. It appeared in evidence that an order for the enlargement of the

Spencer Avenue school at a cost of $15,000 had been presented to the board, and its adoption refused; and it further appeared, that the Spencer Avenue schoolhouse was used for primary school purposes and was situated upon the opposite side of the city and more than a mile from the proposed site for the new grammar school upon the Dr. Forsyth lot. It appeared also that the Broadway lot, upon which the city proposed to erect a high school building, was then occupied by a primary school building which was in actual use by a primary school.

The respondents denied in their answer that the persons intended to be benefited by the enlargement of the Spencer Avenue school would not be benefited by the proposed new school upon the Dr. Forsyth lot. No evidence was offered by the respondents.

At the close of the evidence, the petitioners requested the justice to rule as follows:

1. The orders providing for the construction of the grammar schoolhouse on the "Dr. Forsyth" lot and the high schoolhouse on the "Broadway" lot commit the city to an illegal expenditure of the money authorized to be borrowed under St. 1900, c. 202.

2. The city of Chelsea cannot use money borrowed under St. 1900, c. 202, for the purpose of building a schoolhouse not specified in the act, if the effect of that use be to render it impossible to provide for a purpose which is specified in the act.

3. The words "other school purposes" in that act relate to purposes connected with the high school.

The justice declined so to rule, and ordered a decree to be entered in favor of the respondents, dismissing the petition; and the petitioners alleged exceptions.

*W. M. Noble,* for the petitioners.

*L. L. G. DeRochemont,* for the respondents.

KNOWLTON, J. The first sentence of the St. of 1900, c. 202, is as follows: "The city of Chelsea, for the purpose of purchasing land and erecting thereon a high school building, for furnishing the same, and for other school purposes, and for erecting a fire station and enlarging the Spencer Avenue schoolhouse, may incur indebtedness beyond the limit fixed by law to an amount not exceeding two hundred thousand dollars."

The questions raised by the bill of exceptions relate to the meaning of the words "for other school purposes." The petitioners seek to engraft upon them a limitation which shall make them apply only to school purposes connected with the high school building. They contend that no part of the amount borrowed can be used for any school purpose not directly connected with the specific objects mentioned, at least until all of those objects are accomplished. The respondents contend that the purpose of the statute was to relieve the city to the amount of $200,000 from the restriction of the statutory debt limit, on condition that the money be expended for school purposes and for a fire station, and in their view the mention of specific school purposes is not by way of limitation, but only to make plain the necessity for such legislation. Section 2 of this statute repeals the St. 1897, c. 218, § 4, which last mentioned section fixes the limit of indebtedness for the city from and after the time of its enactment.

The arguments in support of the opposing contentions of the parties are nearly evenly balanced. The question is whether these words shall be construed narrowly or broadly. We are of opinion that the better reasoning calls for a broad and liberal construction of them. Ordinarily the mode of expending money for school purposes and the determination of what schoolhouses shall be built and where they shall be built, and whether particular schoolhouses shall be repaired, is left by the Legislature with cities and towns. In this case the important question for the Legislature was whether the debt limit of Chelsea should be raised with a view to the erection of a fire station and for school purposes. It would have been unwise for the Legislature to attempt to determine the details of expenditure, or how much should be expended for one of the specific objects mentioned and how much for another. In fact, no such determination was attempted, but the distribution of the expenditure among the particular objects named was left to the city. We see no good reason why "other school purposes" do not stand in as favorable a relation to the city's right to expend money as either of the schoolhouses mentioned. Particular objects having been brought to the attention of the Legislature sufficient to justify an extension of the debt limit, the Legislature extended that limit, and

gave authority to the city broad enough to permit expenditure for any school purpose. In the opinion of a majority of the court the entry must be.

*Exceptions overruled.*